**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 09-61021-CIV-ZLOCH/ROSENBAUM

CENTER CAPITAL CORPORATION,

       Plaintiff,

vs.

GULFSTREAM CRANE, LLC,
a Florida limited liability company,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

### *I.  INTRODUCTION*

These matters are before the Court on Plaintiff's Motions for the Issuance of a Replevin Order to Show Cause Pursuant to Florida Statute § 78.065 [D.E. 3, D.E. 7] and Motion for Mandatory Injunction [D.E. 20] and Defendant's Motion to Dismiss Count of 1 of Plaintiff's Complaint [D.E. 13], upon referrals by the Honorable William J. Zloch for report and recommendation [D.E.9, D.E. 16].  The parties presented argument and evidence regarding these Motions at an evidentiary hearing on August 19, 2009, as well as submitting post-hearing filings in the weeks following the hearing.  After consideration of all Motions, supporting and opposing filings, and evidence presented at the hearing, I recommend that the Court **GRANT** Defendant Gulfstream's Motion to Dismiss Count 1 of Plaintiff's Complaint [D.E. 13] and **DENY** Plaintiff Center Capital's Motions for the Issuance of a Replevin Order to Show Cause Pursuant to Florida Statute § 78.065 [D.E. 3, 7] and Motion for Mandatory Injunction [D.E. 20]

1

## II. PROCEDURAL BACKGROUND

Plaintiff Capital Corporation filed this action on July 10, 2009, with a Verified Complaint for Writ of Replevin (Count 1) and for Damages (Count 2). [D.E. 1]. Pursuant to Florida's replevin statute, Fla. Stat. Ch. 78 (1993), Count 1 of the Complaint seeks recovery of property that the Complaint alleges is located in Broward County, Florida. According to the Complaint, the property at issue has a reasonable estimated value of $1,775,000.00, depending on condition. D.E. 1 at Count 1. Plaintiff represents that Non-party Banc of America Leasing and Capital, LLC, and Defendant Gulfstream entered into a Master Loan and Security Agreement (the "Master Agreement") dated December 22, 2006, and related Security Note Number 70006 ("Note 70006"), Security Note Number 70007 ("Note 70007"), and Security Note Number 70008 ("Note 70008") (collectively, "Notes 70006-70008") dated January 9, 2008 (collectively, Master Agreement and Notes 70006-70008 are referred to as "Agreement" [D.E. 1 at 9[1]]), relating to a loan for financing of four Linden-Comansa tower cranes, more specifically, one Model 550 18T, serial number 14.413; one Model 210, serial number 14.422, one Model 21LC400, serial number 14.423; and one Model 290, serial number 14.426 (collectively, "Collateral"). *Id.* at ¶ 2.

Plaintiff Center Capital further avers that on February 5, 2008, Banc of America Leasing and Capital, LLC, assigned its entire interest in the Agreement to Plaintiff Center Capital ("Assignment" [D.E. 1 at 30]), *see* D.E. 1 at ¶ 9, and on February 5, 2008, Defendant Gulfstream, Non-party Banc of America, and Plaintiff Center Capital accordingly executed a Notice and Acknowledgment of Assignment ("Notice of Assignment" [D.E. 1 at 45]). D.E. 1 at ¶ 10. In claiming that Center Capital

---

[1]Although the Master Agreement is attached as Exhibit A to the Complaint in this matter, the Court refers to it, as well as all documents in the court record, by the page number imprinted on the top of it by the CM/ECF system.

has perfected its security interests in the Collateral, Center Capital points to the UCC Financing Statements [D.E. 1 at 48].  D.E. 1 at ¶ 11.

The gravamen of Center Capital's Complaint arises from Gulfstream's alleged failure to make payments due on March 5, 2009, and thereafter, under the terms of Notes 70006-70008 and the Master Agreement.  *See* D.E. 1 at ¶ 15.  In light of Gulfstream's alleged failure to make the March 5, 2009, and subsequent payments, Center Capital invoked the terms of the Agreement on April 27, 2009, to accelerate all amounts due.  *Id*. at ¶¶ 16, 18, 20.

The Complaint asserts that as a result of Gulfstream's alleged failure to make the requisite payments, Gulfstream is in default under paragraph 10(1) of the Master Agreement.  *Id*. at ¶¶ 15, 17, 19.  According to the Complaint, as of June 30, 2009, Defendant owes Plaintiff $522,398.33 for Note 70006, $1,006,940.57 for Note 70007, and $443,118.63 for Note 70008, for a total of $1,972,47.53, plus continuing interest, attorney's fees, and costs.  *Id*. at ¶¶ 16, 18, 20.  As Defendant has allegedly defaulted, the Complaint claims that Defendant is wrongfully detaining the Collateral, the possession of which Plaintiff is entitled to pursuant to paragraph 11(a)(2) of the Master Agreement and Article 9 of the Uniform Commercial Code.  *Id*. at ¶ 22.  Additionally, in satisfaction of Florida's requirements for replevin, the Complaint avers that all Collateral has not been taken for tax, assessment, or fine levied under any law, or seized under any execution or attachment of the Collateral at issue.  *Id*. at ¶ 23.  As relief for Count 1, Center Capital demands judgment for the possession of Collateral against Gulfstream, including attorney's fees and costs incurred in retaking the Collateral.  *Id*. at 6.  Count 2 of the Complaint seeks damages for Defendant's alleged default under the Agreement, including all amounts due and owing, or $522,398.33 for Note 70006, $1,006,940.57 for Note 70007, and $443,118.63 for Note 70008, for a total of $1,972,47.53,  plus

continuing interest, attorney's fees, and costs, as relief. *Id.* at 7-8.

On July 20, 2009, and August 4, 2009, Center Capital filed its Motions for the Issuance of a Replevin Order to Show Cause Pursuant to Florida Statute § 78.065, seeking a writ of replevin for the Collateral identified in the Complaint ("Plaintiff's Replevin Motion") [D.E. 3, D.E. 7]. Plaintiff represented that Gulfstream had been served properly and that it had not waived its right to be notified or heard. *Id.* Accordingly, Center Capital requested that the Court hold a hearing pursuant to Fla. Stat. §§ 78.065 and § 78.067, where Gulfstream would be required to show cause why the Collateral should not be taken from its possession and delivered to Center Capital prior to judgment on the merits of case. *Id.* Judge Zloch referred these Motions to me on August 6, 2009 [D.E. 9], and I set the Motions for an evidentiary hearing on August 19, 2009 [D.E.10].

Gulfstream filed its Motion to Dismiss on August 13, 2009, seeking dismissal of Count 1 of the Complaint regarding replevin. [D.E. 13]. In its Motion to Dismiss, Gulfstream argued that Plaintiff's action for replevin should be dismissed for lack of *in rem* jurisdiction over the Collateral, as none of the Collateral is not located within the judicial district, nor even in the State of Florida. *Id.* In support of its Motion, Gulfstream submitted the affidavit of James Robertson, member and manager of Defendant Gulfstream Crane, LLC, dated August 13, 2009, attesting that all property subject to Center Capital's claims of replevin was located at that time outside Florida. *See* D.E. 13-2 at ¶ 5. Judge Zloch referred Defendant's Motion to Dismiss to me on August 17, 2009. *See* D.E. 16.

Accordingly, on August 18, 2009, I directed the parties to be prepared to present evidence and argument regarding both Plaintiff's Motions and Defendant's Motion to Dismiss at the August 19, 2009, hearing. *See* D.E. 18. On the same day, Gulfstream filed its Opposition to Plaintiff's

4

Motion. [D.E. 19].  In its Opposition, Gulfstream argues the that the Court should deny Plaintiff's Replevin Motion because the Court lacks subject matter jurisdiction to hear Plaintiff's Replevin Motion because no *in rem* jurisdiction over the property at issue exists, since the Collateral is located outside the State of Florida.  *Id.*  Furthermore, Gulfstream contends that Center Capital neglected to comply with a condition precedent in the Agreement by not providing required notice of default to Gulfstream prior to filing of the lawsuit and, therefore, that Center Capital is not entitled to the remedy of replevin.  *Id.*  Gulfstream also avers that Center Capital failed to establish other elements required for a writ of replevin, alleging that Center Capital did not perfect its security interest in the states where the property is located, that Center Capital has no possessory right to the equipment, and that Center Capital has not identified with sufficient particularity the property sought through Center Capital's action for replevin.  *Id.*  Additionally, in event that the Court issues a writ of replevin in favor of Center Capital, Gulfstream urges that Center Capital should be required to post bond in a minimum amount of $3,944,915.06, before it may receive the property at issue.  *Id.*  In support of its Opposition, Gulfstream relies upon the affidavit of James Robertson, a member and manager of Gulfstream, asserting that Center Capital failed to give notice of the default as the Agreement requires and contending that the property purchased with the funding provided under the Agreement is not easily identifiable.  *See* D.E. 19-1 at 1.

Also on August 18, 2009, Center Capital filed its Brief in Support of Jurisdiction for Issuance of Prejudgment Replevin, or in the Alternative, Motion for Mandatory Injunction to Assemble Collateral. [D.E. 20].  In this Brief, Center Capital asserts that Gulfstream has constructive possession of the Collateral identified in the Complaint and, thus, the Court enjoys subject matter jurisdiction over Center Capital's action for writ of prejudgment replevin.  *Id.*  Alternatively, Center

Capital argues that if the Court grants Defendant's Motion to Dismiss regarding Count 1, the Court should enter a mandatory injunction directing Gulfstream to assemble the Collateral identified in the Complaint and deliver it to Gulfstream's principal place of business in Florida or make it available to Center Capital for possession, pursuant to Gulfstream's alleged admission that it is in default under the Agreement. *Id.*

The parties appeared and presented argument regarding their respective Motions pending at the time of the August 19, 2009, evidentiary hearing. *See* D.E. 36, Transcript of August 19, 2009, Evidentiary Hearing ("Tr."). In support of its Motion, Center Capital presented the testimony of Mr. Robertson and submitted into evidence the Agreement, Notes 70006-70008, and the Notice of Assignment. Gulfstream cross-examined Mr. Robertson.

During the hearing, the Court directed Plaintiff to file a legible copy of the Agreement at issue. Additionally, Center Capital requested an opportunity to brief the issue of whether the Agreement requires it to have met a condition precedent before filing suit, as well as whether Center Capital properly perfected its security interest in the Collateral in Florida. Likewise, Gulfstream requested an opportunity to brief the issue of Center Capital's right to a mandatory injunction. On August 22, 2009, the Court granted the parties' requests for additional briefing and set a briefing schedule regarding these additional issues. *See* D.E. 22.

In accordance with the Court's August 22, 2009, Order, Center Capital filed its Brief on the Issues of Default and Perfection in Support of Prejudgment Order for Replevin on August 26, 2009. *See* D.E. 27. In sum, Center Capital argued that the Agreement does not require Center Capital to provide Gulfstream with notice of its default prior to filing suit, Center Capital has properly perfected its security interest in Florida in the Collateral at issue, and Center Capital's description

6

of the Collateral is sufficient for purposes of satisfying the replevin statute. *Id*. On August 28, 2009, Center Capital filed a legible copy of the Agreement. *See* D.E. 29.

On August 31, 2009, Gulfstream timely filed a Memorandum in Opposition to Plaintiff's Motion for Mandatory Injunction to Assemble Collateral [D.E. 30].  In this brief, Gulfstream construed Center Capital's alternate motion for a mandatory injunction as a request for a preliminary injunction and contended that Center Capital may not obtain injunctive relief because it has failed to demonstrate either irreparable harm or the lack of any adequate remedy at law. *See* D.E. 30. Additionally, Center Capital reiterated its earlier arguments that Center Capital has not sufficiently identified Center Capital's equipment for a writ of replevin action, the location of the Collateral outside of Florida deprives the Court of *in rem* jurisdiction, and Center Capital has failed to provide Gulfstream with proper notice to cure as required by the Agreement. *Id*.  On September 2, 2009, Defendant Gulfstream filed its Response to Plaintiff's Brief on Issues of Default and Perfection In Support of Prejudgment Order for Replevin, arguing that the equipment at issue is not sufficiently identifiable for the purposes of replevin, the location of where the financing statements were filed does not affect the Court's lack of *in rem* jurisdiction, and emphasizing, again, that Plaintiff failed to provide Defendant with notice to cure as required under the Master Agreement. *See* D.E. 32.

Center Capital filed its Reply In Support of Its Motion for Mandatory Injunction on September 10, 2009. *See* D.E. 34.  In its Reply, Center Capital asserts that the mandatory injunction it seeks is not akin to a preliminary injunction, but rather, is a substantive right under Fla. Stat. § 679.609(3).  In explaining its position, Center Capital states for the first time that through its Alternate Motion for Mandatory Injunction, it "is seeking final relief on the merits of Count 1 of its Complaint." *Id*. at 6.  These Motions are now ripe for review.

### III.  ANALYSIS

**A.**      ***In rem* Jurisdiction**

As a threshold matter, Gulfstream challenges the Court's *in rem* jurisdiction over Count 1 of the Complaint, and, accordingly, over Center Capital's Motions for the Issuance of a Replevin Order to Show Cause sought in connection with Count 1 of the Complaint.  *See generally* D.E. 13. More specifically, Gulfstream asserts that the Court must dismiss Center Capital's replevin claim because Center Capital seeks replevin pursuant to Florida law, and under Florida law, a court must have *in rem* jurisdiction over the property sought to be replevied.

Since Center Capital premises jurisdiction in this case on diversity grounds, the Court briefly reviews the considerations peculiar to such actions.  As a general matter, a federal court sitting in diversity "has jurisdiction to entertain any civil action that could be brought in a state court," as long as the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are satisfied.  *Turton v. Turton*, 644 F.2d 344, 348 (11th Cir. Apr. 20, 1981).  Here, Gulfstream does not challenge jurisdiction on the basis that Center Capital has failed to allege the necessary contentions to establish federal diversity jurisdiction under Section 1332, but rather, Gulfstream takes issue with Center Capital's averments intended to show that Center Capital could have brought Count 1 of its Complaint in Florida court. In other words, Gulfstream essentially challenges jurisdiction under Florida law, which constitutes a necessary prerequisite to jurisdiction in this Court.  More specifically, Gulfstream urges that Center Capital cannot demonstrate that a Florida court has *in rem* jurisdiction over the Collateral in this case, so this Court, likewise, must lack jurisdiction.

In evaluating Gulfstream's position, the Court must look to Florida law.  *See CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 791 (11th Cir. 1999).  First, the Court

considers rulings of Florida's Supreme Court. *See Bailey v. Southern Pacific Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836 (1980). Where the highest court in the state has rendered no decisions on point, however, this Court must follow the opinions of Florida's intermediate courts, unless it is "convinced that the highest court would decide otherwise." *Id.* (citing *Commissioner v. Bosch*, 387 U.S. 456, 465 (1967)).

The Court begins with the replevin statute, Fla. Stat., Ch. 78. The Florida replevin jurisdiction statute provides, in relevant part, "**78.03  Jurisdiction.** An action for replevin must be brought in a court of competent jurisdiction based on the value of the property sought to be replevied . . . ." Fla. Stat. § 78.03 (1993). The statute, however, does not define the phrase "a court of competent jurisdiction," nor is the meaning readily ascertainable. Moreover, despite research, the Court has been unable to locate any opinions of the Florida Supreme Court specifically addressing the issue of *in rem* jurisdiction as it pertains to any version of Florida's replevin statute. Nevertheless, the Court has identified *Lorenzo v. Murphy*, 32 So. 2d 421 (Fla. 1947), which, in *dicta*, provides some indication of the Florida Supreme Court's leanings regarding the nature of a replevin action. In passing, *Lorenzo* describes a landlord's petition for removal of tenants as a proceeding that is "partially *in rem* and partially *personam* – like replevin a mixed action . . . ." *Id.* at 423. The court provides no further elaboration on replevin and cites to no authority supporting its statement; indeed, replevin is not at issue in *Lorenzo*. Thus, while the Florida Supreme Court's statement is consistent with the subsequent rulings of Florida's intermediate courts regarding the nature of replevin, this Court hesitates to rely exclusively upon *Lorenzo*.

Consequently, the Court considers the rulings of Florida's intermediate appellate courts. As Florida's Fifth District Court of Appeal has explained, "Every action which involves property in the

9

litigation is not an *in rem* action; but every cause of action the object of which requires the court to act *directly* on property, or on the title to the property (the *res*), is an *in rem* action." *Publix Super Markets, Inc. v. Cheesbro Roofing, Inc.*, 502 So. 2d 484, 486, *superseded by statute on other grounds as stated in Blackton, Inc. v. Young*, 629 So. 2d 938 (Fla. 5th DCA 1987) (emphasis in original). Because replevin is a "possessory action," intermediate Florida courts considering the nature of replevin appear to have uniformly concluded that replevin requires *in rem* jurisdiction over the subject matter. *See, e.g., Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc.*, 656 So. 2d 541, 544 (Fla. 5th DCA 1995); *Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am., Inc.*, 664 So. 2d 46, 47 (Fla. 3d DCA 1995); *Huri Enters., Inc. v. Spectacular Midways, Inc.*, 530 So. 2d 956, 957 (Fla. 5th DCA 1988); *Delacruz v. Peninsula State Bank*, 221 So. 2d 772, 776 (Fla. 2d DCA 1969); *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1163 (Fla. 3d DCA 1981); *Int'l Fidelity Ins. Co. v. Prestige Rent-A-Car, Inc.*, 715 So. 2d 1025, 1028 (Fla. 5th DCA 1998). Thus, "[a]n action for replevin cannot be successfully maintained unless the property is *within the state* and subject to the jurisdiction of its courts." *Prestige Rent-A-Car, Inc.*, 656 So. 2d at 544 (citing *Huri Enters., Inc.*, 530 So. 2d at 957) (emphasis in original).

Although the aspect of Florida's replevin statute that enables a court to enter an order returning property to a party constitutes an *in rem* action, the provision permitting an award of damages sustained as a result of the wrongful taking or detention of the property is an *in personam* action. *See Neil*, 397 So. 2d at 1163 n.3 (citing *Delacruz*, 221 So. 2d 772). Thus, as the Florida Supreme Court recognized in *dicta* in *Lorenzo*, 32 So. 2d at 423, replevin is sometimes described as a "mixed action." Nevertheless, as discussed previously, for a court to have jurisdiction over a replevin claim seeking return of property, the court must have *in rem* jurisdiction over the property

10

that is the subject of the action, meaning that the property must be physically located within the court's jurisdiction. *See Prestige Rent-A-Car, Inc.*, 656 So. 2d at 544; *Advantage Car Rental & Sales, Inc.*, 664 So. 2d at 47; *Huri Enters., Inc.*, 530 So. 2d at 957; *Delacruz*, 221 So. 2d at 776; *Neil*, 397 So. 2d at 1163; *Int'l Fidelity Ins. Co.*, 715 So. 2d at 1028.

Here, Gulfstream contends that, contrary to Center Capital's allegations in the Complaint, the Collateral that Center Capital seeks to replevy is located outside Florida and has never been physically present in the state. If Gulfstream has adequately demonstrated this to be the case, the Court lacks *in rem* jurisdiction, and, thus, must dismiss Count 1 of the Complaint, which seeks only return of the Collateral. Therefore, the Court considers the appropriate standards under which to evaluate Gulfstream's Motion to Dismiss.

**B.      Standard on a Motion to Dismiss**

Gulfstream seeks to dismiss Count 1 of the Complaint pursuant to Rule 12, Fed. R. Civ. P. Although Gulfstream does not specify the subdivision of Rule 12 under which it seeks dismissal of Count 1, the Court construes Gulfstream's Motion to Dismiss as seeking dismissal under Rule 12(b)(1), Fed. R. Civ. P., for lack of subject-matter jurisdiction. While the Court recognizes that federal courts considering the issue of *in rem* jurisdiction in the context of federal law have opined that it does not constitute a part of subject-matter jurisdiction, *see, e.g., See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 296 (2d Cir. 2002), under Florida law, "*in rem* jurisdiction is a very special type of necessary judicial subject matter jurisdiction." *Publix Super Markets, Inc.*, 502 So. 2d at 487-88. As such, a party cannot waive *in rem* jurisdiction under Florida law, and a court proceeding pursuant to *in rem* jurisdiction must actually possess *in rem* jurisdiction over the property that is the subject of the matter. *Id.* Consequently, the Court views Gulfstream's Motion to Dismiss as seeking

11

dismissal under Rule 12(b)(1).

Federal courts enjoy limited jurisdiction. *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.), *cert. denied,* 546 U.S. 872 (2005). Generally, the plaintiff bears the burden of establishing subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1248 n.2 (11th Cir. 2005); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).[2] The Eleventh Circuit has noted, "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms." *Ishler v. Internal Revenue Service*, 237 Fed. App'x 394, 395 (11th Cir. Mar. 13, 2007) (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir.1990)). "Facial attacks" on the complaint, require a court to "'merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511). "[F]actual attacks," on the other hand, challenge "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (quoting *Menchaca,* 613 F.2d at 511). The Eleventh Circuit distinguishes these two types of attack as follows:

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion – the court must consider the allegations of the complaint to be true. *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed.2d 212 (1981). But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In

---

[2] Pursuant to *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

> short, no presumptive truthfulness attaches to [the] plaintiff's
> allegations, and the existence of disputed material facts will not
> preclude the trial court from evaluating for itself the merits of
> jurisdictional claims.

*Id.* (citation omitted).

In the instant matter, Gulfstream makes a factual attack on the Court's jurisdiction. The Court has reviewed the Declaration of James Robertson [D.E. 13-1] and has heard evidence during the hearing regarding the pending Motions in this case. During the evidentiary hearing, Mr. Robertson testified and was subject to cross-examination by Center Capital. Mr. Robertson, a member and manager of Gulfstream, D.E. 13-1 at ¶ 2, testified that none of the four cranes that constitute the Collateral in this case have ever been present in Florida. To the contrary, Mr. Robertson explained, when Gulfstream originally took possession of the cranes, one crane was shipped to Gulfstream at the Port of Charleston, and three were shipped to Gulfstream at the Port of Houston. From there, Gulfstream transported the cranes to their various work sites, all of which have always been located outside the state of Florida. Indeed, Mr. Robertson attested, not one of the cranes has ever been physically present in Florida. Rather, two cranes are currently in Texas, one is in Georgia, and one is in Nevada.

Center Capital presented no evidence contradicting Mr. Robertson's testimony, and it did not otherwise impeach Mr. Robertson's testimony. Additionally, this Court finds Mr. Robertson to have testified credibly. Under these circumstances, where no evidence so much as suggests that the Collateral that Center Capital seeks to replevy is located within the state, the Court finds that, as a factual matter, it lacks *in rem* jurisdiction over the Collateral, and, thus, enjoys no jurisdiction over the replevin claim contained in Count 1 of the Complaint.

Nor does Center Capital's reliance on *Steel Motor Services v. Zalke*, 212 F.2d 856 (6th Cir.

1954), require a different conclusion.  In *Zalke*, the Sixth Circuit considered a case where, pursuant to Michigan's replevin statute, the plaintiff sought in federal court in Michigan return of a trailer physically located in Chicago, Illinois.  The defendant, a corporation with places of business in both Chicago and Detroit, sought dismissal of the case under Michigan's replevin statute, which, at the time, required that the cause be commenced and tried in the county where the subject of the action was situated.  The Sixth Circuit affirmed the district court's denial of the defendant's motion to dismiss, finding that the Michigan law upon which the defendant based its motion constituted only a provision of venue, not of jurisdiction.  *See id.* at 858.  As such, the Sixth Circuit reasoned, it did not deprive the district court of jurisdiction, and, because "state law cannot control the venue of federal courts," *id.*, the district court did not err by denying the defendant's motion to dismiss. Rather, the Sixth Circuit explained, the district court enjoyed jurisdiction because "[a] mere direction to [the defendant's] agent in Chicago would have placed the trailer in the hands of the owner in Detroit."  *Id.*  Consequently, the defendant had constructive possession of the trailer at issue, and the district court could grant replevin.  *Id.*

While this Court acknowledges that Florida law has long recognized constructive possession as fulfilling one of the elements of replevin, *see, e.g.*, *Richbourg v. Rose*, 44 So. 69, 74-75 (Fla. 1907); *Evans v. Kloeppel*, 73 So. 180, 183 (Fla. 1916); *Bush v. Belenke*, 381 So. 2d 315, 316 (Fla. 3d DCA 1980), the problem arises from the fact that under Florida law, unlike Michigan law as analyzed by the Sixth Circuit in *Zalke*, the issue of constructive or actual possession constitutes part of the cause of action of replevin, separate and apart from the issues of jurisdiction and venue.  *See Prestige Rent-A-Car, Inc.*, 656 So. 2d at 544; *Advantage Car Rental & Sales, Inc.*, 664 So. 2d at 47; *Huri Enters., Inc.*, 530 So. 2d at 957; *Delacruz*, 221 So. 2d at 776; *Neil*, 397 So. 2d at 1163; *Int'l*

14

*Fidelity Ins. Co.*, 715 So. 2d at 1028.  In other words, a ***court*** must first have *in rem* jurisdiction (as well as all other jurisdiction) to consider a plaintiff's replevin cause of action.  Once a plaintiff crosses the jurisdiction and venue thresholds, the court then evaluates whether a plaintiff can establish all elements of replevin, including, among others, whether the ***defendant*** maintains actual or constructive possession of the property.  Consequently, a defendant's constructive possession of the property sought to be returned, which can fulfill an element of replevin once a court has proper jurisdiction over a case, cannot satisfy the jurisdictional requirement that the presiding court have *in rem* jurisdiction over the property sought to be replevied.  *Id.*  Moreover, Florida courts have been clear in describing the *in rem* jurisdictional requirement not as a matter of venue, but, rather, as a matter of subject-matter jurisdiction.  *See Publix Super Markets, Inc.*, 502 So. 2d at 487-88.  As a result, the reasoning of the *Zalke* Court, which describes the Michigan replevin statute at issue in that case as imposing only a venue requirement, does not apply in this case, where the Florida courts have repeatedly and apparently uniformly described the *in rem* jurisdictional requirement as an unwaivable subject-matter jurisdictional necessity.

## C.    Center Capital's Claim Under Fla. Stat. § 679.609

Center Capital makes an alternate request that the Court enter what Center Capital describes as a mandatory injunction requiring Gulfstream to assemble the Collateral, deliver the Collateral to Gulfstream's principal place of business, and make the Collateral available for repossession by Center Capital.  Center Capital seeks the mandatory injunction under Count 1 of the Complaint.  In support of its alternate request, Center Capital directs the Court to Fla. Stat. § 679.609(3), which provides that where parties enter an appropriate agreement, a secured party "may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by

the secured party which is reasonably convenient to both parties." Center Capital alternatively suggests that Count 1 effectively seeks specific performance.

In support of these theories, Center Capital directs the Court to the allegation, "Defendant Gulfstream is in default under the Agreement and is wrongfully detaining the Collateral to which [Center Capital] is entitled to possession in accordance with paragraph 11(a)(2) of the Master Agreement and, separately, pursuant to Article 9 of the Uniform Commercial Code," *see* D.E. 20 at 7 (quoting D.E. 1 at ¶ 22 and Exhibit A), and Center Capital's prayer for relief, which requests "judgment for the possession of the Collateral . . . ." *Id.* (quoting D.E. 1 at 6). Paragraph 11(a)(2) of the Master Agreement, in turn, provides, in relevant part,

> Upon the occurrence of an Event of Default, Lender may, in its discretion, exercise any one or more of the following remedies with respect to any Equipment Notes or Equipment: . . . (2) cause Borrrower to promptly discontinue use of or disable any Equipment, and, at Borrower's expense, have the Equipment assembled, prepared and adequately protected for shipment (together with all related manuals, documents and records, and any other Collateral), and either surrendered to Lender in place or shipped (freight and insurance pre-paid) to such location as Lender may designate within the forty-eight contiguous United States . . . .

D.E. 1 at 11.

Turning first to Center Capital's argument that Count 1 supports the issuance of a mandatory injunction under Fla. Stat. § 679.609(3), Section 679.609(3) provides, "If so agreed, and in any event after default, a secured party may require a debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secure party at a place which is reasonably convenient to both parties." The parties have not directed the Court to any decisions where Section 679.609(3) has been discussed, nor has the Court's research revealed any such cases. Statutory interpretation, however, must begin and end with the language of the statute where the statute is clear

on its face. *Fla. Dept. of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 323 (Fla. 2001). Here, under the plain language of the statute, in order to invoke the protections of Section 679.609(3), a party must hold a secured interest, and either a default must have occurred, or circumstances must exist that the parties had agreed would require the debtor to assemble the collateral and make it available to the secured party. Center Capital has alleged in Count 1 that it holds a secured interest in the Collateral, *see* D.E. 1 at ¶ 11, and it has similarly averred that Gulfstream is in default. *See id.* at ¶ 22. Consequently, it appears as though Center Capital has asserted each of the material elements necessary to state a claim under Section 679.609(3).

Additionally, the Complaint alleges diversity, and the amount in controversy exceeds $75,000. *See id.* at ¶¶ 4, 7. Gulfstream challenges neither jurisdictional assertion. Moreover, in *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970), the Eleventh Circuit's predecessor court acknowledged that where collateral is physically located in several states, no one possessory action provides an adequate remedy to the creditor, and consequently held, "Neither the Federal Rules of Civil Procedure nor the Erie doctrine deprive Federal courts in diversity cases of the power to enforce State-created substantive rights by well-recognized equitable remedies even though such remedy might not be available in the courts of the State." Here, Fla. Stat. § 679.609(3) specifically provides for the remedy Center Capital seeks, although neither it nor any other Florida statute appears to specify a procedural mechanism by which a party may take advantage of the substantive right bestowed by Section 679.609(3). Therefore, it appears as though Center Capital at least alleges in Count 1 a viable legal theory.

Nevertheless, the Court cannot simply ignore the fact that Center Capital has titled the count in which these allegations appear "Replevin." Replevin is a statutory cause of action in Florida, and

it has a very specific meaning, requiring a party seeking replevin to satisfy particular statutory standards.  An action pursuant to Section 679.609(3) is not a replevin action.  Indeed, if it were, the Court would lack jurisdiction over it, as discussed previously, since the Court would still have to have *in rem* jurisdiction over the Collateral – a circumstance that is lacking in this case.

Instead, as Center Capital urges the theory pursuant to Section 679.609, based on *Clark Equip. Co.*, 431 F.2d 54, it is effectively a remedy in equity, or, to the extent that Center Capital relies on paragraph 11(a)(2) of the Master Agreement to request return of the Collateral, Center Capital seeks specific performance.  Neither equity nor specific performance, however, constitutes replevin, which is the title that Center Capital chose to give Count 1 of the Complaint that it filed.  Thus, while as a technical matter, Count 1 may contain allegations that suffice to support legal theories other than replevin, it fails to provide notice to Gulfstream that Center Capital is proceeding under such theories.  To the contrary, while the Court has no reason to believe that Center Capital has affirmatively attempted to mislead Gulfstream regarding the contents of Count 1 of the Complaint, titling the first count only "Replevin,"[3] a statutory cause of action in Florida, but nonetheless proceeding under an equity theory, a statutory theory under Section 679.609(3), or a specific performance theory results, regardless, in unfair surprise to Gulfstream.

As the Supreme Court has repeatedly underscored, although federal pleading standards are

_____

[3]A review of the file in this case reflects that Center Capital's first mention of the mandatory injunction theory appears in its Alternate Motion for Mandatory Injunction [D.E. 20], filed August 18, 2009, in response to Defendant's Motion to Dismiss [D.E. 13], asserting that the Court lacks jurisdiction over Center Capital's replevin claim under Count 1 of the Complaint. No mention of the mandatory injunction theory appears in either of Center Capital's Motions for Replevin Order to Show Cause.  *See* D.E. 3, D.E. 7.  Nor does the Complaint refer to Fla. Stat. § 679.609(3) or employ the phrase "mandatory injunction."  For these reasons, the mandatory injunction theory appears to be an afterthought arrived at in a creative attempt to rescue a claim for which this Court lacks jurisdiction.

relatively liberal, they still require that "the 'short and plain statement' [of the claim showing that the pleader is entitled to relief] must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharms. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41 (1957)). Here, although, arguably, Count 1 asserts the grounds upon which these other theories rest, it does not provide "fair notice of what the claim is." Consequently, the Court should dismiss Count 1 in its entirety as that claim is currently pled.

**D.     Center Capital's Alternate Motion for Mandatory Injunction**

Should the Court decide not to dismiss Count 1 in its entirety, however, this Report and Recommendation considers Center Capital's Alternate Motion for Mandatory Injunction. As noted previously, Center Capital's Alternate Motion seeks a mandatory injunction directing Gulfstream to assemble and deliver the Collateral to Center Capital, pursuant to Section 679.609(3). In support of its theory, in its Alternate Motion, Center Capital directs the Court to *Clark Equip. Co.*, 431 F.2d 54. D.E. 20 at 8-9.

In *Clark Equip. Co.*, Armstrong Equipment Company ("Armstrong") was indebted to Clark Equipment Company ("Clark"), pursuant to a security agreement that created a lien upon equipment owned by Armstrong. The security agreement provided that in the event of default, Clark could demand immediate payment of the note and require Armstrong to assemble and make available to Clark at a place designated by Clark the equipment upon which Clark held the lien. When Armstrong defaulted on payment, Clark filed an action seeking to foreclose against Armstrong and seeking the protective relief of a mandatory injunction requiring Armstrong to assemble and deliver the equipment collateral, which was physically located in five different states. The district court

19

granted a preliminary injunction after finding that Armstrong was in default in making payments as required by the security agreement, and ordered Armstrong to make payments in accordance with the agreement.  Subsequently, following another hearing, the court issued a mandatory injunctive order.  This one required Armstrong either to assemble and deliver the equipment or to pay a $1 million bond.  If Armstrong chose to assemble and deliver the equipment, Clark was to pay a $1 million bond.

On appeal, the Fifth Circuit upheld the entry of the mandatory injunction as a proper exercise of the district court's equity jurisdiction, finding that the issuance of the injunction was "the only appropriate remedy for the enforcement of the terms of the agreement in view of the location of the property in five different States."  *Id.* at 57 (citing *Stern v. S. Charter Tube Co.*, 390 U.S. 606).  Significantly, however, the Fifth Circuit noted that "nothing is here decided except as to the injunction before the Court on appeal.  The merits are not before the Court."  *Id.*  In other words, the relief granted in *Clark* was preliminary in nature.  Indeed, the Fifth Circuit was careful to note expressly that it was not considering the merits of the case.

Apparently because Center Capital's Alternate Motion employs the words "mandatory injunction" in requesting relief under Section 679.609(3), and further, because the case upon which Center Capital relies in seeking the mandatory injunction granted only preliminary relief, Gulfstream's Memorandum in Opposition to Plaintiff's Motion for Mandatory Injunction [D.E. 30] construes Center Capital to seek a preliminary injunction.  *See* D.E. 30 at 2-5.  Thus, based on Gulfstream's understanding, Center Capital's Complaint should have alleged and Center Capital must prove all four of the following showings in order to demonstrate that a court should issue preliminary injunctive relief: "(1) a substantial likelihood of success on the merits; (2) irreparable

injury absent an injunction; (3) the injury outweighs whatever damage the injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest." *Citizens for Police Accountability Political Committee v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009) (citing *McDonald's Corp.*, 147 F.3d at 1306).

Neither Center Capital's Alternate Motion brief nor its Reply, however, attempts to make a demonstration of satisfaction of each of these four requirements. Instead, Center Capital argues that "[t]he mandatory injunction Center Capital seeks is not akin to a preliminary injunction; rather, it is a substantive right created by the State of Florida." D.E. 34 at 2. Moreover, for the first time in its Reply In Support of Its Motion for Mandatory Injunction [D.E. 34], filed on September 10, 2009, after the evidentiary hearing in this matter, Center Capital controverts Gulfstream's assumption that Center Capital seeks preliminary injunctive relief through its Alternate Motion and instead describes the mandatory injunction it requests as "final relief on the merits of Count 1 of its Complaint." *Id.* at 6.

Thus, unlike in *Clark Equip. Co.*, where the court entered preliminary mandatory injunctive relief only, Center Capital in this case effectively asks this Court to enter summary judgment in its favor on Count 1, based on the evidence adduced at the evidentiary hearing weeks earlier on August 19, 2009. Yet Center Capital files no motion styled as a summary judgment motion, no statement of material facts not in dispute, and no record citations to the evidence upon which it relies from the hearing, and it seeks summary judgment in what it describes as a reply brief in support of the Alternate Motion. Because Center Capital makes its request that the Court enter final judgment in its favor for the first time in its "Reply" brief, and further, because Center Capital neither identifies its "Reply" brief as seeking summary judgment nor complies with the Southern District of Florida's

21

Local Rules regarding the filing of summary judgment motions, *see* Local Rule 7.5,[4] S.D. Fla., Gulfstream has received no opportunity under Rule 56, Fed. R. Civ. P., or otherwise, to oppose Center Capital's effort to obtain summary judgment.

Moreover, Center Capital's failure to comply with the requirements of the Local Rules in seeking summary judgment in itself provides sufficient reason for the Court to deny Center Capital's Alternate Motion for Mandatory Injunction at this time. *Cf. Carolina Acquisition, LLC v. Double Billed, LLC*, 627 F. Supp. 2d 1327, (S.D. Fla. 2009) ("To facilitate rulings on summary judgment, this District has adopted Local Rule 7.5, which sets out a basic procedure to ensure that the material facts upon which summary judgments turn are clearly set forth by each side."); *see also Bettis v. Toys R Us*, 2009 WL 995476, *2-*3 (S.D. Fla. Apr. 13, 2009) (emphasizing that an opposing party's statement of disputed material facts at issue in a form that fails to comply with Local Rule 7.5's requirement that it controvert the moving party's statement of undisputed facts by each fact as numbered by the moving party, suffices to deem the moving party's statement of material facts admitted where they are supported by the record). Thus, I recommend that the Court deny Center Capital's Alternate Motion for Mandatory Injunction at this time.

### *CONCLUSION*

For the foregoing reasons, I recommend that the Court **GRANT** Defendant Gulfstream's Motion to Dismiss Count 1 of Plaintiff's Complaint [D.E. 13] and **DENY** Plaintiff Center Capital's Motions for the Issuance of a Replevin Order to Show Cause Pursuant to Florida Statute § 78.065

---

[4]Among other requirements, the Local Rules require, among other things, that a movant accompany its motion for summary judgment with a numbered, concise statement of material facts as to which the movant contends there exists no genuine issue to be tried. *See* L.R. 7.5.A, C, S.D. Fla.

[D.E. 3, 7] and Motion for Mandatory Injunction [D.E. 20] .

The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[5] 28 U.S.C. § 636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 25th day of November, 2009.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. William J. Zloch
      Counsel of Record

---

[5]Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).